WASHBURN and another vs. FLETCHER.

CONTRACTS: SALE OF LAND: STATUTE OF FRAUDS. *(1) Offer and acceptance by mail. (2, 3) Contract for sale of land: What writing sufficient under Statute of Frauds. (4, 5) Contract in the alternative. (6) Rights of person not named in negotiations, for whose benefit a contract is made. (9) Contract construed.*

EQUITY: SPECIFIC PERFORMANCE. *(5) Vendor and Purchaser: Specific performance of vendor's contract. (6, 8) Immaterial defenses in suit for specific performance. (10) Equitable estoppel.*

1. If A., by letter sent by mail, makes to B. a proposal for a contract, and B. deposits in the post-office, prepaid, a letter of acceptance addressed to A. at the proper place, this completes the contract, though A. never receives such letter of acceptance.

2. Under the statute of frauds relating to contracts for the sale of land (R. S., ch. 106, sec. 8), the writing relied upon to establish such a contract need not describe either the consideration or the lands which are the subject of the sale, otherwise than by a reference therein to some extrinsic fact or instrument by means of which the consideration and the land can be known with sufficient certainty.

3. Defendant was indebted to W. and B., the plaintiffs herein, on his notes for $10,000 with interest, and had also covenanted to sell and convey to them the undivided nine-sixteenths of 8889 acres of land to be selected by plaintiffs from a certain larger body of land (of which he held the title to a nine-sixteenths interest), if they should elect to purchase such lands by a day named, and should on that day pay him $20,000 in cash and release said note and the indebtedness secured thereby. Plaintiffs duly notified him of their election not to purchase said lands on the terms named; and W., acting for himself and his coplaintiff B., offered to pay him $20,000 for the same lands. Defendant answered by letter, signed by him and sent by mail: " I cannot sell at your offer. But .... I see no way to pay your note this fall, and, in order to do it, I will sell enough at the contract price to pay it, or I will give 2000 acres for my notes, you to select in eighty-acre lots.'' W. (still acting for himself and B.) answered promptly (by letter duly addressed and deposited in the post-office): " Your offer is accepted. If you will inform me when you will be in D., we will meet you there, or make arrangements for the surrender of your notes and the execution of your deed." *Held*, that defendant's offer, so accepted, constituted a valid contract for the sale of land, expressing with sufficient certainty both the subject of the sale and the consideration.

4. The contract being alternative in form, that the parties would respectively sell and accept enough land, at the price named in defendant's first covenant, to pay defendant's notes there referred to, or would sell and accept, for the same consideration, 2000 acres, to be selected by the vendees in eighty-acre lots, the latter were entitled to a reasonable time, after acceptance of the offer, to elect under which alternative they would proceed.

5. Plaintiffs having, within a reasonable time, tendered to defendant his said notes, and the mortgage by which they were secured, with a good and sufficient release thereof, and also a deed in due form to be executed by him, conveying nine-sixteenths of certain lands selected by them pursuant to said offer, and he having refused to accept such tender and execute such deed: *Held*, that equity will enforce a specific performance of the contract on his part.

6. W. having acted through the whole transaction not only for himself but for his coplaintiff, the latter is entitled to the benefit of the contract

Washburn and another vs. Fletcher.

sought to be enforced, even though his interest was not disclosed to defendant during the negotiations; and the fact that, while such contract was in form with W. alone, both plaintiffs are named as grantees in the deed tendered to defendant for execution, is immaterial.

7. One D. having been named as one of the payees and mortgagees in defendant's said notes and mortgage, and it being admitted in the answer that those instruments were tendered by plaintiffs to defendant, "with a good and sufficient release thereof properly executed and acknowledged," along with the deed tendered for execution, the question whether D.'s interest had been assigned to plaintiffs, is immaterial.

8. The question whether defendant, after the acceptance of his offer by plaintiffs, entered into an agreement with third persons, by which he is bound to convey to them a part of the lands in dispute in case he is not bound to convey them to plaintiffs, is also immaterial.

9. The lands which defendant covenanted to sell and convey to plaintiffs by his first contract in that behalf, were to be selected from lands described in the body of that contract as situate in two specified towns. Before the expiration of the time limited for plaintiffs' election whether they would purchase under that contract, defendant added to it an indorsement, signed by him, purporting to allow such selection to be made from lands in two other towns, in addition to those first named. *Held*, that whether defendant was bound, under his first contract, by the indorsement thereon, or not, his offer subsequently accepted must be construed as giving plaintiffs the right of selection from all four of the towns mentioned in the first contract *with the indorsement* thereon.

10. If the second contract was ambiguous in respect to plaintiffs' right to select lands from two of said towns, and the deed tendered to defendant for execution included some lands situate in those towns, but he did not then object to it *on that ground, quære*, whether equity would listen to the objection afterwards, in a suit for the specific performance of the contract.

APPEAL from the Circuit Court for *Oconto* County.

Action to enforce specific performance of an alleged agreement by the defendant to convey to the plaintiffs certain lands in Oconto county. The complaint sets out at length a contract, dated January 25, 1875, executed by the defendant under seal, wherein he covenanted and agreed to sell and convey to the plaintiffs and one J. B. Davis the undivided *nine-sixteenths* of 8,889 acres of land, to be selected by them on or before July 1st in the same year, from any lands described in

a certain patent executed by the state of Wisconsin to him (bearing date on or about March 4, 1871, and recorded in the office of the register of deeds of Oconto county, in vol. 18 of deeds, on pp. 420–430 inclusive), which may be situated in townships numbers 34 and 35 in range 13 east, and numbers 35 and 36 in range 12 east. The contract contains certain provisions as to how the lands were to be selected, and concludes as follows: "This contract is made upon the express condition that if the said *Bent*, *Washburn* and Davis shall elect to purchase said lands by the 1st day of July, 1875, they shall pay me on that day, at the First National Bank in the city of Chicago, the sum of thirty thousand dollars, upon the execution and delivery of a deed by me to them, for the lands so selected by them. And the ten thousand dollars this day loaned by *G. W. Washburn*, J. B. Davis and A. R. Bent to me, due in one year, with seven per cent. interest, and secured by my three promissory notes, due in one year, and by mortgage on a portion of the lands described in said patent, shall be received and applied as so much of the purchase money; and the remaining twenty thousand dollars shall be paid in money, as above stated. And if they decline to purchase the said lands upon the terms above specified, the ten thousand dollars so loaned shall be repaid, with seven per cent. interest, in one year from this date."

This instrument was duly attested and acknowledged, and on the 28th of January, 1875, was recorded in the office of the register of deeds of said county. It is stated in the complaint that on July 14th in that year the defendant made the following addition in writing to said agreement: "I will extend the time for the fulfillment of this contract sixty days. I will allow the 8,888 acres to be selected out of towns 35, R. 14, and 37, R. 12, in addition to those named herein."

It is then alleged that at or about the date of the contract, the plaintiffs and Davis advanced and loaned to the defendant $10,000 as therein mentioned, and the latter executed his

notes therefor and a mortgage to secure the same, pursuant to such contract — the payees and mortgagees named therein being the plaintiffs and said J. B. Davis; that the plaintiffs and Davis elected in due time not to take the land or any part of it, of which the defendant had due notice; that the defendant, at the time the contract was made, was and still is the owner in fee of the interest which he covenanted to sell in the lands affected by the contract; and that on or about September 16, 1875, Davis, for value received, sold and assigned all of his interest in such notes and mortgages to Mrs. A. R. Bent, the wife of the plaintiff *D. C. Bent*.

The alleged agreement for the specific performance of which the action was brought, is stated in the following paragraph: "That on or about the 26th day of August, 1875, the plaintiff *Ganem W. Washburn*, acting for himself and the plaintiff *D. C. Bent*, made an offer to the defendant, to pay him $20,000 cash for the said lands mentioned and referred to in the aforesaid contract or obligation of said defendant, which offer the defendant, on or about the 30th of August, 1875, refused, and then and there, in writing, under his hand, duly offered and agreed with the plaintiffs, through the plaintiff *Ganem W. Washburn*, to sell to the plaintiffs a sufficient amount of the said lands referred to and mentioned in defendant's contract, at the price mentioned in said contract, to pay the said defendant's said mortgage and promissory notes; or [that he] would give the plaintiffs two thousand acres of said land in payment of the said notes and mortgage, the said land to be selected by the plaintiff in eighty-acre lots; which said proposition, offer and agreement of said defendant, the plaintiff *Ganem W. Washburn*, acting for and on behalf of himself and his coplaintiff, *D. C. Bent*, on or about the 2d of September, 1875, duly accepted in writing, duly signed; that the defendant is a resident of Detroit, Michigan, and plaintiffs of the city of Oshkosh, Wisconsin; and that he made such offer and agreement through the mails; and that the plaint-

iffs, immediately upon the receipt thereof, accepted the same, as aforesaid."

Then follows an averment that the plaintiffs selected lands pursuant to the agreement last mentioned, and the descriptions of the lands so selected are given in full, from which it appears that the lands are all located in the townships mentioned in the original agreement of the defendant and the modification thereof; and it is averred that they are a part of the lands mentioned and referred to therein.

The breach of the alleged agreement is thus stated: " That, on the 29th day of September, 1875, the plaintiffs duly tendered to the defendant said mortgage and notes, so given by him as aforesaid, with a good and sufficient release thereof, properly executed and acknowledged, and also tendered to defendant a deed of conveyance, in due and usual form, wherein the defendant and his wife were named as grantors, and the plaintiffs as grantees, conveying in fee simple absolute an undivided nine-sixteenths of the above described lands, so selected by the plaintiffs, to be taken under the said agreement of sale made between the plaintiffs and the defendant on or about the first of September, 1875, as aforesaid, and demanded that the defendant duly execute the same; that the defendant then and there absolutely refused, and still neglects and refuses, to execute the same; and that the defendant then and there refused to perform and carry out his said agreement with the plaintiffs, and still refuses and neglects to perform and carry out the same, although requested so to do by plaintiffs before the commencement of this suit."

The complaint concludes with a general averment of performance by the plaintiffs; an offer to bring into court the notes and mortgage executed by defendant, for cancellation and surrender; and a prayer that specific performance by the defendant of his contract be adjudged.

The defendant, in his answer, denies knowledge as to the alleged assignment by Davis of his interest in the notes and

mortgage to Mrs. Bent, and as to whether plaintiffs selected any lands, except as he is informed on those subjects by the complaint; and he avers that some of the lands described in the complaint are not included in the alleged agreement which plaintiffs seek to enforce, and that they have no right thereto. He also claims in his answer that the alleged agreement is void under the statute of frauds. There is no general denial, but the answer contains specific admissions of the truth of several averments of fact in the complaint, one of which admissions is as follows: "This defendant admits that on or about the 29th day of September, 1875, the said plaintiff tendered to this defendant the said notes and mortgage, with a good and sufficient release, properly executed and acknowledged, as then stated by said plaintiffs, and also tendered to this defendant a deed of conveyance, in the usual form, for this defendant and his wife, as grantors, to convey to the plaintiffs the land described in said complaint; which this defendant refused to execute, as stated in said complaint."

The following extract, in addition to what has already been stated, will sufficiently show the nature and extent of the defense set up in the answer:

"This defendant admits the offer made by said plaintiff *Washburn*, on the 26th day of August, 1875, to pay this defendant twenty thousand dollars for the lands referred to in said contract, and which offer was refused by this defendant.

"And this defendant also admits that on or about the 30th day of August, 1875, he did, in writing signed by him, offer to sell to the said plaintiff *Washburn* a sufficient amount of said lands referred to in said contract of the 25th day of January, 1875, at the price mentioned in said contract, to pay the said note and mortgage; or [that he] would give two thousand acres of said land in payment thereof, the said land to be selected in eighty-acre lots. The precise language of said offer this defendant cannot state; he has no copy of said offer, and he does not admit the legal effect thereof, as set forth in

said complaint; and he claims that he is in no way liable thereby, except as the offer itself, when produced, shall appear. This defendant is informed by said *Washburn* that, on the 2d day of September, 1875, he wrote two letters to this defendant, accepting said offer; one directed to this defendant at Detroit, Michigan, and the other at Boston, Massachusetts. This defendant denies that he ever received any letter directed to him at Detroit, Michigan, accepting said offer, and says that he never received the letter directed to him at Boston until the 18th day of October, 1875, when the same was forwarded to him at Detroit, and a copy of which is annexed to this answer, noted exhibit 'A,' and which he prays may be taken as a part hereof. A copy of the letter written to this defendant at Detroit, as claimed by said *Washburn*, was delivered to this defendant by said *Washburn* on or about the 29th day of September, 1875; a copy of which copy is hereto annexed, marked exhibit 'B,' and which he prays may also be taken as a part of this answer. And this defendant here claims and submits that neither of said letters operated as an acceptance of any or either of the propositions contained in the alleged offer of this defendant, to wit: to take lands at the price mentioned in said contract, or to take 2,000 acres in payment of said notes. Nor did said letters contain a description of any lands which were to be selected. The offer of this defendant did not describe any lands by which the lands offered could be ascertained."

There is also an averment in the answer that the defendant " has entered into an agreement with other parties to sell a portion of said lands, if he is not bound to convey the same to the plaintiffs."

The offer which is the foundation of the alleged contract, is contained in the following letter sent by the defendant from Boston to the plaintiff *Washburn* at Oshkosh:

" BOSTON, *August 30, 1875.*

G. W. WASHBURN. *Dear Sir:* I cannot sell at your offer.

But I am in a strait, as I see no way to pay my note this fall, and in order to do it I will sell enough 'at the contract price to pay it, or I will give 2,000 acres for my notes, you to select in 80-acre lots. Anything to pay my indebtedness, but to sell for 20,000 is killing.

" I, to-day, received the copy of a letter from W. R. Barron, Green Bay, to Mr. Rice of Jackson, as to the trespass upon our lands, and saying he could collect if pushed soon. Can you follow it up and direct me what to do? I shall be here two weeks more, and be at home 20th of September.

" Yours in haste, GEO. N. FLETCHER."

The alleged acceptance of such offer is contained in two letters written and mailed at Oshkosh on the 2d of September, 1875, by the plaintiff *Washburn* to the defendant, one addressed to Detroit and the other to Boston. These letters are exhibits "A" and " B," mentioned in the answer. Exhibit "A" is as follows:

" OSHKOSH, *September 2, 1875.*

" G. N. FLETCHER. *Dear Sir:* Your favor from Boston is received, and I have this day written you at Detroit that your offer is accepted, and if you will advise me of your return to Detroit, we will arrange for the execution of the papers. I also wrote in relation to the trespass matters of which you speak.

I take the precaution to write you to Boston; but, as you do not give me the street and number to which you have your letters directed, I have thought it possible that a letter directed to you at Boston simply might not reach you.

" Yours in haste, G. W. WASHBURN."

The material portion of exhibit " B " is as follows:

" OSHKOSH, *September 2, 1875.*

" GEO. N. FLETCHER, ESQ. *Dear Sir:* Your favor of the 30th ult. is received, and your offer is accepted. If you will inform me when you will be in Detroit, we will meet you

there, or make arrangements for the surrender of your notes and the execution of your deed. * *

"In haste, I am yours, etc., G. W. WASHBURN."

On the trial, the foregoing exhibits, together with several other letters which passed between the defendant and the plaintiff *Washburn* in respect to the lands, were read in evidence. It is unnecessary to set out these letters at length.

The testimony is uncontradicted, that the plaintiff *Washburn* acted, in the matter of the purchase of the lands in controversy, for himself and his coplaintiff.

The defendant testified that the first intimation he received of the acceptance of the offer contained in his letter of August 30th, was on the day the deed was tendered to him for execution, September 29, 1875.

The only proof of any agreement by the defendant to sell a portion of the lands to other parties, as alleged in the answer, is contained in the following instrument:

"CHICAGO, *September 24, 1875.*

"We, the undersigned, I. M. Bray and L. Choate, of Oshkosh, do hereby agree to pay *George N. Fletcher*, of Detroit, the sum of twenty-one thousand dollars, as follows: Twelve thousand on or before January 1, 1876, and the balance in two equal yearly payments, with interest; for three thousand acres of pine land, which they have the privilege of selecting from twenty sections of said *Fletcher's* lands, in towns 36 N., 12 E., 35 N., 12, 13, 14 east, and 34 N., 12 and 13 east, of which he owns 9-16ths; and when so selected and paid for, the said *Fletcher* is to give us a good warranty deed of the same. The said *Fletcher* having the privilege of cancelling this contract at any time before December next, if he shall find that he is bound to deed *G. W. Washburn* any part of the same. BRAY & CHOATE."

The plaintiffs brought into court for surrender to the defendant, the notes and mortgage given by the latter for the $10,000, with a proper discharge of the mortgage.

The circuit court found substantially that all the material averments of the complaint were true, and that plaintiffs were entitled to the relief therein demanded.

This appeal is by the defendant from a judgment against him pursuant to such findings, requiring him to convey to the plaintiffs the lands described in the deed tendered to him for execution, being an undivided nine-sixteenths of $3,546\frac{97}{100}$ acres, or $1,995\frac{1}{6}$ acres.

*Frank B. Van Valkenburgh,* for the appellant, argued the following among other points: 1. The contract of January 25, 1875, was not between the parties to this action, nor is it in any way connected with the action. 2. The indorsement on that contract is subject to the same objections; and besides, it was a mere naked offer, without consideration expressed (Tay. Stats., 1254, § 8), and without any in fact, not addressed to any person, and never accepted or acted upon by any person. 3. The letter of *Fletcher* to *Washburn,* dated August 30, 1875, and the alleged acceptance by the latter of the offer there made, did not constitute a valid contract between *Fletcher* and the plaintiffs. (1) The offer was not made to the plaintiffs, but to *Washburn* only; and the acceptance was by him only. The question whether *Washburn* alone or several persons should select the lands, and whether *Fletcher* should deed to *Washburn* alone or to several persons, might be a material one, and *Fletcher* testifies that it was so. He did not contemplate a sale to any other person than *Washburn,* whom he supposed to be negotiating for himself alone; and if the latter was in fact acting for other persons, whom he did not disclose, he could not create a contract between *Fletcher* and such other parties. (2) The contract alleged to have been made by these letters was for an interest in lands (*Yates v. Martin,* 1 Chand., 118), and it was insufficient under the statute of frauds. Such a contract must be *all* in writing, and parol evidence to help it is inadmissible. 1 Parsons on Con., 294–6, 298, note; 2 Kent's Com., 511; *Salmon Falls Manuf'g*

*Co. v. Goddard*, 14 How. (U. S.), 446; *Morton v. Dean*, 13 Met., 385; *Parrish v. Koons*, Parsons' Sel. Eq. Cas., 78, 94; *Parkhurst v. Van Cortlandt*, 1 Johns. Ch., 274–280. (3) The alleged contract sued upon does not identify the land to be conveyed, nor does it fix the price of any land. It is an offer to do one of two things. To make a contract, there should have been on plaintiffs' part a definite acceptance of one or the other of those two things. There must have been a clear accession on both sides to one and the same set of terms. Dart on Vendors, 103, and cases cited. The minds of the contracting parties must meet. 1 Parsons on Con., 463; *Matteson v. Scofield*, 27 Wis., 671; *McCotter v. Mayor of New York*, 37 N. Y., 325; *German v. Machin*, 6 Paige, 288. (4) No acceptance of defendant's offer was ever *communicated to him* until the tender of a deed; and that was not within a reasonable time. (5) The acceptance must have been according to the exact terms of the offer, to bind the defendant. 1 Parsons on Con. (4th ed.), 399; *N. W. Iron Co. v. Meade*, 21 Wis., 474; *Eliason v. Henshaw*, 4 Wheat., 225. The tender of the deed and release was not an acceptance of either of the alternatives submitted by defendant. One offer was of enough land at the contract price ($6 per acre), to pay defendant's notes, which then amounted, with seven months' interest at seven per cent., to $10,408; in other words, it was an offer of 1,736 acres; the other was of 2,000 acres; both were of a certain amount of land, and not of an undivided interest in a larger amount; and both were of land mentioned in defendant's previous contract. But the deed was of an undivided nine-sixteenths of 3,560 acres — equivalent to 2002½ acres; and at least 600 acres of these were lands not mentioned in the previous contract — the *indorsement* of July 14, 1875, not being in any sense a contract. 4. Equity must be satisfied that a claim for a deed is fair, just and reasonable, and the contract equal in all its parts, and founded on an adequate consideration, before it will decree specific perform-

ance. *Seymour v. Delancey*, 6 Johns. Ch., 222; *Smith v. Wood*, 12 Wis., 382; *Hay v. Lewis*, 39 id., 369. · Nor will a specific performance be decreed where it is doubtful whether an agreement had been concluded (*Carr v. Duval*, 14 Pet., 77–83), nor where the contract is not *certain*. *Hepburn v. Dunlop*, 1 Wheat., 179; *Barry v. Coombe*, 1 Pet., 640; *Carrington's Heirs v. Brents*, 1 McLean, 167; *Bissel v. Bank*, 5 id., 495; *Bowen v. Waters*, 2 Paine, 1; *Kendall v. Almy*, 2 Sumn., 278; *Oakley v. Ballard*, Hemps., 475; *Coles v. Bowne*, 10 Paige, 526; *Abeel v. Radcliff*, 13 Johns., 297; *Merrett v. Clason*, 12 id., 102; *Parkhurst v. Van Cortlandt*, 1 Johns. Ch., 273; *Schuyler v. Van der Veer*, 2 Caines, 235; *Wright v. Weeks*, 3 Bosw., 372; *Talman v. Franklin*, 3 Duer, 395; *Stocker v. Partridge*, 2 Rob., 193 ; *Trustees of Baptist Church v. Bigelow*, 16 Wend., 28; *Kay v. Curd*, 6 B. Mon., 100; *Boydell v. Drummond*, 11 East, 142; *Hinde v. Whitehouse*, 7 id., 558. 5. "Mere delay to enforce a contract may constitute a bar to a specific performance in equity, when it has resulted in a change of the attendant circumstances of such a nature as to render it inequitable to enforce it." *Cheney v. Cook*, 7 Wis., 421, and authorities there cited. The first intimation the defendant had that any one proposed to accept either offer, was when a deed was tendered to him at Detroit, at which time he had already disposed of a large portion of the lands involved.

*Gabe Bouck*, for the respondent, contended, among other things, 1. That an offer of sale and acceptance by letter through the mail is a memorandum in compliance with the statute of frauds (*Northwestern Iron Co. v. Meade*, 21 Wis., 474; *Matteson v. Scofield*, 27 id., 671; *Vassar v. Camp*, 11 N. Y., 441; Dart on Vendors, 92 et seq.); and that the contract is complete when the letter of acceptance is deposited in the post-office. *Vassar v. Camp, supra*; *Trevor v. Wood*, 36 N. Y., 307; *Brisban v. Boyd*, 4 Paige, 17; *Mactier v. Frith*, 6 Wend., 106; *Beardsley v. Davis*, 52 Barb., 159; *Averill v. Hedge*,

12 Conn., 424; *Hamilton v. Ins. Co.*, 5 Barr, 339; *Abbott v. Shepard*, 48 N. H., 14; *Stockham v. Stockham*, 32 Md., 196; *Chiles v. Nelson*, 7 Dana, 281; *Levy v. Cohen*, 4 Ga., 1; *Moore v. Pierson*, 6 Iowa, 279; *Dunlop v. Higgins*, 12 Jurist, 295; *Adams v. Lindsell*, 1 Barn. & Ald., 681; Dart on Vendors, 101. 2. That a description of the land by reference to another instrument was sufficient within the statute of frauds. Dart on Vendors, 97. In case of an imperfect reference to another instrument, parol evidence is admissible to identify it. Dart, 103. In case of letters, there need not be any specific description of, nor even an express reference to, the prior documents; it will be sufficient if the court be clearly satisfied that a reference was in fact intended, and of the identity of the instrument. Dart, 103; *Matteson v. Scofield, supra.* It is not necessary that the lands should be described in full; they may be identified by parol. 2 Parsons on Con., 294; *Cheney v. Cook*, 7 Wis., 413; *Atwater v. Schenck*, 9 id., 160; *Mead v. Parker*, 115 Mass., 413; *Slater v. Smith*, 117 id., 96; *Ross v. Baker*, 72 Pa. St., 186; *Yerby v. Grigsby*, 9 Leigh, 387; *Owen v. Thomas*, 3 Mylne & K., 353; *Waring v. Ayres*, 40 N. Y., 357; 21 Wend., 651. 3. That a written contract giving a party the option to buy lands to be selected out of a larger quantity is valid, and will be enforced in equity (*Carpenter v. Lockhart*, 1 Ind., 326; *Cheny v. Cook, supra*); that the letters containing the offer and acceptance in this case were equivalent to a single instrument signed by the parties, containing a formal contract for such an option (*Simpson v. Breckenridge*, 32 Pa. St., 287); and that it was enough that plaintiffs used due diligence in making their election. 4. That it was of no importance that the name of *Washburn* only was used in the letters; because, when an agent makes a contract in his own name, it enures to and binds the principal; and this is not only true between the principal and the agent, but also as to third parties. Story on Con., § 160; Benj. on Sales, §§ 219, 239; Chitty on Con., 149, 303; 2 Parsons on Con., 291–2;

*Williams v. Bacon*, 2 Gray, 387, 393; *Fuller v. Hooper*, 3 id., 341; *Eastern Railroad Co. v. Benedict*, 5 id., 561; *Dykers v. Townsend*, 24 N. Y., 57. 5. That the question whether defendant's original contract, either as first made or as subsequently modified by the indorsement thereon, was valid or not, is immaterial, the action not being brought on that contract, and it being sufficient to identify the same as the instrument referred to in the contract sued upon.

Lyon, J. I. The issues of fact made by the answer of the defendant and the proofs, are few and easily disposed of.

1. The defendant took issue upon the averment in the complaint that Davis had assigned to Mrs. Bent his interest in the notes and mortgage given by the defendant for the $10,000 loaned to him by Davis and the plaintiffs. Such assignment was proved on the trial. Besides, the answer admits a tender to the defendant, when the deed was demanded, of "the said notes and mortgage, with a good and sufficient release thereof, properly executed and acknowledged." This admission renders it entirely immaterial whether Davis' interest in the securities had been so assigned or not. It is to the effect that the release was executed by the person having authority to execute it; and it is of no importance whether such person was Davis or Mrs. Bent.

2. It is also quite immaterial to the validity of the alleged contract, whether the defendant did or did not receive the letters, or either of them, mailed to him by the plaintiff *Washburn* on the 2d of September, accepting the offer contained in defendant's letter of August 30th. For it is well settled in England and this country, that when a proposal for a contract is made by letter, sent by mail, the deposit of a letter of acceptance in the post-office by the person to whom the proposal is made, addressed to the person making it, at the proper place, completes the contract, even though the latter never receives the letter accepting his offer. *Vassar v. Camp*, 11 N. Y., 441, and cases cited.

3. The allegation in the answer that the defendant had entered into an agreement with other parties for a sale of a portion of the land in controversy, is without significance, because it is also therein alleged that such agreement is upon condition that he is not bound to convey the same lands to the plaintiffs. The only evidence relating to this portion of the answer is the instrument signed by Bray & Choate; and that does not show, and there is no evidence in the case tending to prove, that the defendant had made any binding contract to convey any portion of the land to Bray & Choate, or to any other person.

It is believed that the above observations dispose of all disputed questions of fact involved in the case.

II. On the pleadings and evidence, the case, stated most favorably to the defendant, is this: In January, 1875, defendant agreed in writing, over his signature, to sell to the plaintiffs and one Davis his interest (being an undivided nine-sixteenths) in 8,889 acres of land in certain townships in Oconto county, described in the patent from the state, to be selected by them in a certain manner out of a larger quantity of land in the same townships, in which the defendant had a like interest. The plaintiffs and Davis advanced, or loaned, to the defendant $10,000 at the same time, for the repayment of which, with interest, in one year, the defendant gave them his notes, secured by a mortgage on a portion of such lands.

In July following, the defendant indorsed on such agreement, and signed, a permit that such selections might be made from lands in two other townships, evidently described in the same patent, but not originally specified. The plaintiffs and Davis, in due time, exercised an option which was given them in the contract, and declined to purchase the lands. This put an end to the contract, and left the defendant liable to pay, when his notes should mature, the $10,000 and interest which was to apply in part payment for the lands had the contract remained in force.

Such was the position of affairs, when, on the 26th of August, 1875, the plaintiff *Washburn* offered to pay the defendant $20,000 for the lands referred to in the contract between the defendant and the plaintiffs and Davis. The defendant declined to accept this offer, but, four days later, made the offer contained in his letter of August 30, 1875, which last offer the plaintiff *Washburn* accepted by addressing to the defendant two letters to that effect, one directed to him at his residence in Detroit, and the other at Boston, where he then was, and by depositing such letter, with the postage thereon prepaid, in the post-office at Oshkosh, on the 2d day of September, 1875.

On the 6th of the same month, the defendant sent a postal card to *Washburn* from Boston, on which he wrote: "Hope to leave by the 20th; will notify you when." September 24th, *Washburn* wrote to the defendant at Detroit: "I wish you would notify me as soon as you are ready to close up our land matter." The defendant returned to Detroit on the 23d or 24th of that month. On the 25th, he wrote to *Washburn* the following letter:

"DETROIT, *September 25, 1875.*

G. W. WASHBURN, Esq. *Dear Sir:* When you were here, you suggested that you would be glad to give me Mr. Edwards' minutes, by my paying you my share of the expense. Will you please give me the sum I should have to pay. I am trying to sell some part of my lands, at least enough to meet my note to you, and can now take $12,000 for 2,500 acres, if I so elect; but I hope to do better, and think your minutes will aid me in the sale. I regret you cannot make me an offer better than the above one. I wish you would look the matter over carefully, and see the best you can do. Five dollars an acre is too little to take for the best of those lands. But the note must be paid at all events.

Yours truly,    GEORGE N. FLETCHER."

On the receipt of this letter, the plaintiffs started at once

for Detroit, and on the 29th, *Washburn*, who was acting and had acted throughout for his coplaintiff, *Bent*, as well as for himself, tendered to the defendant the notes and mortgage for $10,000, and a sufficient release of the mortgage, and demanded that he execute to the plaintiffs a deed then presented to him, which the plaintiffs had caused to be prepared for that purpose. Such deed was in the usual and proper form of a conveyance of lands, and, had it been executed by the defendant and his wife, would have conveyed to the plaintiffs the title in fee to an undivided nine-sixteenths of the tracts of land therein described, that is to say of $3,546\frac{97}{100}$ acres of land, equal to the whole of $1,995\frac{1}{4}$ acres. Said tracts of land are the same mentioned in the agreement of January 25, 1875, and in the indorsement thereon of July 14th, about three-fourths thereof being in the townships specified in the instrument as originally executed, and the remaining one-fourth being in townships 35, range 14, and 37, range 12, specified in such indorsement.

The defendant refused to execute such deed, but did not specify as a reason for such refusal that it contained descriptions of lands not included in his offer of August 30th.

III. We are now to determine whether the above facts constitute a valid contract on the part of the defendant to convey to the plaintiffs the lands in controversy.

That the offer of the defendant, and the acceptance of that offer by the plaintiff *Washburn*, would constitute a valid contract between them, which each may enforce against the other, unless the same is rendered invalid by the statute of frauds or is void for uncertainty, is too clear for argument.

1. The provision of the statute of frauds by which the validity of this contract must be tested, is as follows: "Every contract for the leasing for a longer period than one year, or for the sale, of any lands or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be

subscribed by the party by whom the lease or sale is to be made." R. S., ch. 106, sec. 8.

This contract is in writing, and is subscribed by the party by whom the sale is to be made — that is, by the defendant. Does the writing express the consideration for the agreement?

The writing signed by the party need not expressly specify all that the statute requires. It is sufficient if it does so by reference to other writings which contain the required specifications. A conveyance by a grantor, in terms, of all that parcel of land conveyed to him by a deed executed by A. B., will, without further description, pass to the grantee the lands described in such deed of A. B., if the same be intelligibly referred to. As was said by Dixon, C. J., in *Simmons v. Johnson*, 14 Wis., 523, "It is sufficient, within all of the adjudications, that the deed furnishes on its face, either directly or by reference to extrinsic facts and evidences, the means by which it can be connected with its subject matter, and the intention of the parties ascertained with reasonable certainty. If it do this, it cannot fail for uncertainty. For this purpose it is enough if it refers to other deeds or writings by which the lands granted can be identified." And again, in *Coats v. Taft*, 12 id., 388, the chief justice said: "We do not understand the law to require that a deed should on its face ascertain the limits or quantity of the estate granted, or the particular property conveyed; but that it will be sufficient if it refers to certain known objects or things, and provides definite means by which the same may be definitely ascertained and known." See also *Benedict v. Horner*, 13 id., 256.

These cases go upon the maxim, *id certum est quod reddi· certum potest;* and, although they relate to the description of the land, are equally applicable to the expression of the consideration. It is not perceived why the doctrine of them is not applicable to an executory agreement for the conveyance of lands, as well as to an executed conveyance. Such application was made by this court to a contract of sale entered into

by letters passing through the mails, in *Matteson v. Scofield*, 27 Wis., 671.   There can be no doubt that the notes mentioned in the defendant's offer of August 26th are those given by him for the $10,000 and interest; and in the light of the above cases we have no difficulty in holding that the contract expresses the consideration thereof.   The offer of the defendant became, by acceptance, a contract to convey a specified quantity of land for a specific price, to wit, $10,000 and the accrued interest from the date of notes given therefor.   In legal effect the consideration is as well stated as in *Matteson v. Scofield, supra*.   We think the contract fulfills the requirements of the statute of frauds.

2. Is the contract sufficiently certain in its designation of the lands to be conveyed ?   Many of the foregoing observations on the last proposition apply equally to this question, and need not be repeated.   In the proposal of August 30th, the words of the defendant are: "I cannot sell at your offer." What was the offer referred to ?   The pleadings answer the question.   It was an offer by the plaintiff *Washburn*, made four days previously, to purchase and pay $20,000 for the lands referred to in the original contract.   The defendant then proceeds to say: "But I am in a strait, as I see no way to pay my note this fall, and, in order to do it, I will sell enough at the contract price to pay it, or I will give 2000 acres for my notes, you to select in eighty-acre lots.   Any thing to pay my indebtedness."   It is substantially admitted in the answer, that the indebtedness and note here mentioned are the $10,000 loan and the securities given therefor; and there is no room to doubt that the proposal to sell enough to pay the same, referred to a sale of a portion of the lands for which *Washburn* had recently offered the defendant $20,000 — that is to say, of the lands mentioned in the patent from the state to the defendant.

The offer of the defendant, which was accepted by the plaintiff *Washburn*, is in the alternative.   It is to sell enough at

the contract price, which was six dollars per acre, to pay the debt, *or* to convey 2000 acres, to be selected by the purchaser in eighty-acre lots, in payment of such debt. This would be at the rate of less than six dollars, or about five dollars and twenty cents per acre. The offer was accepted, and hence, the contract was made in that form. We suppose a contract in that form is valid.

If A. and B. enter into a contract in proper form, by which A. agrees to sell and B. to purchase either lot one or lot two, owned by A., at a specified price for the one or the other, and the contract gives B. the right to select the lot to be conveyed, no good reason is perceived why this is not a valid contract, even before the selection is made, and why B. may not select his lot in due time and enforce a conveyance thereof in a court of equity, pursuant to the contract. It seems to us that the same principle is applicable to this case, and that, although the contract is in the alternative, when the selection was made pursuant to the contract, and the defendant notified thereof, he was legally bound to execute a conveyance of the selected lands, *provided* the selection was made in a reasonable time and within the limits specified in the contract.

We are satisfied from the evidence that the selection was made, and the defendant notified thereof, within a reasonable time after his offer was accepted. Indeed, the proofs show very great diligence on the part of the plaintiffs in those respects. Whether any of the lands selected are not included in the contract, will be considered hereafter.

It is earnestly argued by the learned counsel for the defendant, that the contract is fatally defective for uncertainty in that the defendant does not therein agree to convey any specified tracts or parcels of land.

It is true, the specific tracts of land which the plaintiffs seek to compel the defendant to convey to them, are not described in the contract, or in any writing referred to therein. But the contract does provide for the conveyance of a certain

number of acres out of a larger quantity; or rather, perhaps, it provides for the sale of a number of tracts which are not specifically designated, out of a larger number of tracts which are so designated. It does, however, definitely provide means by which the tracts to be conveyed may be ascertained. By its terms, the same are to be ascertained by the selection of the purchasers, and, as already observed, the lands were so selected before the conveyance thereof was demanded. This is sufficient, within the rule of the cases above cited.

We conclude that there is no such uncertainty in the terms, or the description of the subject matter, of the contract, as will prevent a court of equity from adjudging that it be specifically performed.

IV. As already stated, about one-fourth of the lands selected under the contract and described in the deed tendered to the defendant for execution, are situated in the two townships specified in the defendant's indorsement of July 14th on the agreement of January 25th, and which are not specified in the original agreement. It is claimed that these lands are not included in the contract for the specific enforcement of which this action is prosecuted; and hence, that the defendant is under no obligation to convey them.

It may be that there is an ambiguity in the terms of the contract in this respect. The defendant may have intended by his offer of August 30th to confine the right of selection to the townships mentioned in the original agreement, or he may have intended to extend it to the additional townships mentioned in the indorsement of July 14th. The language employed is probably consistent with either intention. The fact (if it be a fact) that the defendant was not legally bound by the indorsement, seems to throw no light on the question of intention, and we find nothing in the testimony which aids in its solution.

But the agreement of January 25th and the indorsement of July 14th, taken together, constitute the form at least of a

contract between the parties thereto; and we apprehend that, ordinarily, either party, when referring to the contract after such indorsement, would have in his mind the contract which the two writings together were supposed to express. Hence, in the absence of testimony on the subject, we think it must be held that the contract gives the right of selection from all the townships mentioned both in the original agreement and in the indorsement thereon.

Moreover, if the contract is ambiguous in that respect, we think the defendant should have informed the plaintiffs, when the deed was tendered for execution, that he did not intend to give them the right to select in the additional townships, and that therefore the deed included lands which he had not agreed to convey. That would have enabled the plaintiffs to select other lands in place of those which the defendant thus denied his obligation to convey, and they would have been entitled to a reasonable time for that purpose. Failing to make the objection at that time, it is doubtful whether a court of equity should, under the circumstances of the case, listen to it afterwards. But, without deciding whether the defendant has or has not waived his right to urge that objection, we hold the true construction of the contract to be (in the absence of proof to the contrary), that it gave the purchaser the right to select from all the townships named in both instruments.

V. The contract which is sought to be enforced, is, in form, between the defendant and the plaintiff *Washburn*, and, in the deed tendered the defendant for execution, both plaintiffs are named as grantees. This fact is immaterial. *Washburn* was acting for himself and his coplaintiff, *Bent*, throughout the whole transaction; and it is settled that the latter is entitled to the benefit of any contract which *Washburn* made in his behalf, although it may not have been disclosed to the defendant that *Bent* had any such interest therein. *Stowell v. Eldred*, 39 Wis., 614, is conclusive upon this point.

It is believed that the foregoing observations dispose of all

Washburn and another vs. Fletcher.

the alleged errors relied upon to reverse the judgment of the circuit court. Failing to find any material error in the rulings and decision of that court, we must affirm the judgment.

*By the Court.* — Judgment affirmed.

The appellant asked for a rehearing upon the question whether he should be compelled to convey to the plaintiffs any lands not described in the contract of January 25, 1875, as it stood before the indorsement of July 14, 1875. His counsel contended, 1. That there was no evidence in the case that appellant was the owner of all the lands mentioned in the deed tendered by the plaintiffs, and which the decree herein requires him to convey to them. 2. That it was alleged in the answer and appeared by the evidence, that the appellant was not aware, until this action was commenced, that the lands selected by plaintiffs and described in the deed tendered to him included lands described in the indorsement but not in the original contract.

Counsel for the respondents contended in reply, 1. That in a suit for a specific performance of a contract to convey land, it is not necessary to allege or prove ownership in the vendor; but, if the vendor does not own the land, that is matter of defense. 2. That the construction given by the court to defendant's offer in respect to the lands to which it applied, is clearly correct; and that the defendant cannot now be allowed to object that some of the lands described in the deed tendered by plaintiffs were not included in his offer, after having failed to take that objection at the time of such tender, since that would operate as a fraud upon the plaintiffs.

The motion for a rehearing was denied.