L. J. MUELLER FURNACE COMPANY, Appellant, vs. MEIKLE-- JOHN, Respondent.

*March 26—April 19, 1904.*

*Sales: Canceling order before acceptance: Time of mailing: Evidence.*

1. An order for goods, given to an agent and not to become bind-· ing unless approved and accepted by the vendor, may be with-· drawn or canceled up to the time of such acceptance.
2. Where in such a case the order was sent to the vendor by mail, the contract became binding at the moment when a postal card of acceptance, properly addressed, was deposited in the postoffice by the vendor, unless the order had been previously· withdrawn.
3. The evidence in this case—tending to show, among other· things, that a letter canceling an order was received by the vendor at 2 p. m., and showing that the postal card accepting the order was postmarked at a branch postoffice four blocks. from his office at 4 p. m. of the same day—is *held* to justify a. finding that the order was canceled before acceptance.

APPEAL from a judgment of the circuit court for Waupaca· county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

This is an action for breach of a contract of purchase of a fire box boiler and two steam radiators, the answer being a general denial. The action was tried before the court, the· jury being waived. It appeared by the evidence that the plaintiff is a corporation dealing in steam-heating apparatus

at Milwaukee, and employs several traveling agents; that on the 5th day of August, 1902, one of its agents called on the defendant at Waupaca, Wisconsin, and after some negotiation obtained from him two written orders for steam-heating apparatus at certain fixed prices, one covering a Peoria Fire Box Boiler No. 11, and the other covering two Favorite Steam Radiators, both orders being expressedly subject to approval by the plaintiff; that the agent mailed the orders to the plaintiff from Oshkosh on the afternoon of August 6, 1902, and that they reached the plaintiff in the morning mail August 7, 1902; that on August 6th the defendant mailed a letter to the plaintiff at Milwaukee directing that both orders be canceled, which letter was duly stamped and placed in the post office at Waupaca at 2 o'clock p. m. of that day, so that it would go south at 4:13 p. m., and in due course would reach Milwaukee on the morning of August 7th; that this letter was registered. Mr. L. J. Mueller, Jr., who is the secretary of the plaintiff corporation and attends to the correspondence and the filling of mail orders, testifies that the original orders were received from the agent on the morning of August 7th, and were immediately answered by postal card to the defendant acknowledging their receipt and stating that they would receive prompt attention; that he immediately ordered the boiler and radiators from the factories at Peoria, Illinois, and Springfield, Ohio, respectively, the orders going forward in the 11 o'clock a. m. mail; that the defendant's registered letter countermanding the orders was not received until the afternoon of the same day, and that he immediately answered the same, stating that the order had been accepted and would not be canceled except on payment of the profits of the sale. Upon cross-examination Mueller stated that he did not see the postal card acknowledging the defendant's orders after it was written; that the order clerk wrote it, and that it was copied in the copybook of the firm, and he saw it there and from its position in the book could tell that it was mailed in

the morning mail. The order clerk was not called as a witness. The evidence showed that the plaintiff's office was four blocks from the branch postoffice called "Station A" in Milwaukee. Frank Grahame, superintendent of Station A, was called as a witness, and produced the carrier's record showing the delivery of registered letters on August 7th, and testified from this record and the custom of business that the defendant's letter canceling the orders should have been delivered to the plaintiff at 2 o'clock p. m., or very soon afterward, August 7th. The postal card acknowledging the receipt of the order was introduced in evidence, and bears upon its face the following postmark: "Milwaukee Sta. A August 7 4 P. M."

The court found that the plaintiff did not accept the orders until after it had received the letter of countermand, and hence that no contract was made, and judgment was entered dismissing the complaint, from which the plaintiff appeals.

For the appellant there was a brief by *F. F. Wheeler,* and oral argument by *J. E. Roehr.*

For the respondent there was a brief by *E. L. & E. E. Browne,* and oral argument by *Mr. E. E. Browne.*

WINSLOW, J. It was suggested by the respondent upon the argument that the bill of exceptions contained no exceptions to the findings of the court, and upon this suggestion the appellant's counsel moved that the record be remitted to the trial court for correction of the bill and insertion of the exceptions, or, in case that motion was denied, for leave to dismiss the appeal. Upon examination of the record, however, we find that the bill of exceptions contains exceptions to all of the findings which are in dispute, and that the bill is duly certified; hence the appellant's motions become unnecessary to consider and are denied without costs.

Upon the merits the controversy is in very small compass. The orders given by the defendant to the plaintiff's agent

were by their terms only to become binding if approved and accepted by the plaintiff company. Up to the time of such approval and acceptance they could be withdrawn or canceled by the defendant. The whole transaction being by mail, the acceptance took place and the contract became binding at the moment when the postal card of acceptance, properly addressed, was deposited in the postoffice by the plaintiff, unless the orders had been previously withdrawn. *Washburn v. Fletcher*, 42 Wis. 152. So the only question really is whether the defendant's letter directing that the orders be canceled reached the plaintiff's office before the postal card of acceptance reached the postoffice. The trial court found an affirmative answer to this question, and we are unable to say that this answer is against the weight of the evidence. It is true that the plaintiff's secretary testified that the orders were received in the morning of August 7th and the postal card of acknowledgment was immediately mailed, while the letter of countermand was not received until afternoon; but upon cross-examination he admits that he did not send the postal card himself, that he never saw the original, and only testifies as to the time it was mailed from the position of the copy thereof in the copybook and the custom of the business. On the other hand, the proof is very strong that the countermanding letter was received as early as 2 o'clock p. m., while the postal card of acknowledgment bears the stamp of Station A at 4 p. m. Now, while there is no evidence as to how long letters remain in a city postoffice before they are stamped, it is matter of common knowledge that in city offices the collection and forwarding of mail is very frequent during business hours. Certainly, there is a strong inference, if a letter or postal is stamped at 4 p. m., that it reached the office very shortly before that time. If it reached the office at any time after 2 o'clock, then it was too late, because, as before stated, there was ample evidence to show that the letter of countermand reached the plaintiff's office at 2 o'clock.

There being no direct evidence which fixes the exact time when the postal card was deposited in the postoffice, we think the inference drawn by the trial court from the postoffice stamp, that it was deposited shortly before 4 p. m., was entirely justified, and hence that the orders were countermanded before acceptance.

*By the Court.*—Judgment affirmed.