HAWKINSON, Appellant, vs. HARMON, Respondent.

*October 12 — November 1, 1887.*

*Contract of sale by letters: Statute of frauds.*

1. A letter written at Oshkosh, Wisconsin, by an agent for the defendant at his request, dated April 29, 1885, and directed to the agent of a nursery-man near Minneapolis, Minnesota, saying that the defendant wanted certain specified trees delivered at his farm in Lisbon, Dakota, as soon as possible, and asking him to write immediately whether he can do it,— when, construed with a letter written by the defendant himself at Minneapolis, May 8, 1885, in which he says, "I have stopped over here — to see if you have shipped my trees.— Please send them at once," *held* to constitute an absolute order for the trees; and the plaintiff's shipping the trees within two days after receiving such order created a valid contract of purchase and sale, notwithstanding a telegram sent by the defendant from Dakota, on the day the trees were shipped, but not received until two days afterward, directing them not to be sent.

2. Under sec. 2327, R. S., the note or memorandum of sale required by the statute of frauds may be signed by an agent of the buyer.

APPEAL from the County Court of *Winnebago* County.

This action was brought in justice's court, to recover the purchase price of a quantity of trees alleged to have been sold by the plaintiff to the defendant. The plaintiff recovered before the justice, and the defendant appealed to the county court. A trial in the latter court resulted in a judgment of nonsuit, from which the plaintiff appeals to this court.

The material facts as disclosed by the testimony given on the trial in the county court, are as follows: The plaintiff is a nursery-man in the vicinity of Minneapolis, Minnesota; the defendant resides at Oshkosh, in this state, and has a farm in Dakota. In the transactions out of which this action arose, one Little was the agent of the plaintiff, and one Chase the agent of the defendant. Under the date of Osh-

kosh, April 29, 1885, Chase, by direction of defendant, wrote to Little as follows: "I received yours of the 22d, and immediately wrote a postal to *Horace Harmon*, but he did not come to see me until yesterday; but I told him you wrote me that you would commence to deliver last Monday, and I did not know where a letter would reach you, but I would write to Minneapolis. . . . He says he will be there when the trees arrive, and if they look O. K. he has the money to pay for them on the spot. He wants 13,500 box-elders, one year old, at $4 per thousand, and 13,500 soft maple, one year old, at $3 per thousand. This makes in all 27,000 trees — quite a little order. He wants them delivered at Lisbon, Dakota, as soon as possible, and wants you to write to me just as soon as you get this, and tell me if you can do it, and when the trees will be in Lisbon; for he is going there, and does not want to go until about the time the trees will be there." This letter was signed by Chase. It contained other matter, but the above extracts therefrom are all it contained concerning the trees. Under date of Minneapolis, May 8, 1885, the defendant wrote to Little as follows: "I stopped over here on my way out to Lisbon, to see if you had shipped my trees. I presume you have not. Please send them at once, as I do not want to stay out there any longer than I can possibly help, and I can't do anything until they come. Yours, respectfully, H. M. HARMON." The trees here mentioned are those specified in Chase's letter of April 29th.

Both the above letters were handed to the plaintiff by Little on Saturday, May 9, 1885, and the plaintiff shipped the trees to Lisbon, Dakota, consigned to the defendant, by the Northern Pacific Railroad, on Monday, May 11, 1885, a little after noon. He also took the usual bill of lading from the agent of the railway company, and about the same time sent a bill of the trees to Chase at Oshkosh.

The testimony tends to show that the trees arrived at Lis-

bon, and that the defendant refused to accept them because, he claimed, they came too late; but the plaintiff was not notified of such refusal until two or three weeks afterwards. The plaintiff guarantied the freight on the trees, and afterwards paid it. On May 13th, two days after the shipment, the plaintiff found in his post-office box a telegram, dated May 11th, signed *H. M. Harmon*, which reads: "Do not send the trees." To whom this telegram was addressed, or how it came in the plaintiff's box, does not appear. It was not there, however, on May 11th. On the above testimony the county court nonsuited the plaintiff.

For the appellant there was a brief by *Jackson & Thompson*, and oral argument by *H. B. Jackson*. They took the ground that there was a sufficient memorandum of sale, and an implied if not an actual acceptance of the trees, and a nonsuit was unauthorized, citing numerous authorities.

For the respondent there was a brief by *Finch & Barber*, and oral argument by *Henry Barber*. They contended, among other things, that the letter of April 29 was merely a letter of inquiry, calling for an answer, but never answered. The letters and telegrams taken together show that the minds of the parties never met. There was no proper written memorandum of the sale. The one claimed does not show who is the person to be charged or in whose favor. Benjamin on Sales, sec. 233; *Grafton v. Cummings*, 99 U. S. 100, 107; *Sanborn v. Flagler*, 9 Allen, 474; *Sumner v. Stewart*, 69 Pa. St. 321; *Marion Co. v. Shipley*, 14 Cent. L. J. 112; Wood on Statute of Frauds, secs. 356, 364; *Skelton v. Cole*, 1 DeG. & J. 596; *Ridgway v. Ingram*, 50 Ind. 145; *O'Donnell v. Leeman*, 43 Mo. 160; *Reid v. Kenworthy*, 25 Kan. 701; *Thomas v. Kerr*, 3 Bush (Ky.), 622; *Winchester v. Howard*, 97 Mass. 303. The contract was void for want of mutuality. *Atlee v. Bartholomew*, ante, p. 43.

LYON, J. Counsel for the defendant maintain that the testimony fails to show any contract for the sale and pur-

chase of the trees; and if that proposition is not sustained, and it be held that a contract in form was so made, that such contract is void, under the statute of frauds.

1. Did the parties enter into such contract?[b] There is some apparent ground for the. argument that the letter of April 29, 1885, was a letter of inquiry, to ascertain whether the trees could be procured of the plaintiff, rather than an absolute order for them. But the two letters, of April 29th and May 8th, must be read together, and, being so read, there can be no doubt but that they constitute an absolute order for the trees, which became a contract of purchase and sale between the parties when the plaintiff accepted the same and shipped the trees as directed. In the letter of May 8th, the plaintiff (or, what is the same thing, his agent, Little) was requested to send the trees at once. It must be held, therefore, that a contract for the sale and purchase of the trees was closed, at least in form.

2. The claim that such contract is void within the statute of frauds cannot be successfully maintained. The point made against the validity of the contract is that no note or memorandum thereof was made in writing, and subscribed by the party to be charged therewith. R. S. sec. 2308. The letter of April 29th was subscribed by Chase, the agent of the defendant, and that of May 8th by the defendant himself. Sec. 2327, R. S., provides that "every instrument required under any of the provisions of this title (title 22) to be subscribed by any party, may be subscribed by the agent of such party lawfully authorized thereto." This section is applicable to the present case. We conclude that the contract between the parties is not void under the statute of frauds.

It follows that if the plaintiff has executed the contract on his part he is entitled to recover. No question is made but that the trees shipped by him fulfilled the requirements of the contract, as to description, quality, and quantity. If, therefore, he shipped them within a reasonable time after

he received the order therefor, he has fulfilled the contract on his part. The testimony tends to show that the shipment was made within a reasonable time. The plaintiff having established a *prima facie* case by the testimony which he introduced on the trial, it was error to nonsuit him.

*By the Court.*— The judgment of the county court must be reversed, and the cause will be remanded for a new trial.

See note to this case in 35 N. W. Rep. 28.— REP.