SHERLEY and another, Appellants, vs. PEEHL, Respondent.

*December 8, 1892 — January 10, 1893.*

*Contracts: Continuing offer: Acceptance.*

Defendant sold goods for plaintiffs on commission and had agreed to discount the paper of customers to whom plaintiffs did not wish to sell without such guaranty. On August 23 plaintiffs wrote to defendant asking if he would discount two bills in respect to which no such guaranty had been requested. On August 26 he telegraphed: "Will discount paper after the 15th, both bills, one [per

cent.] a month, without recourse." On the same day plaintiffs wrote that " about the 15th " they would let him know whether or not they would avail themselves of his offer. There was no further correspondence between the parties until September 10, although the purchasers of the goods failed on September 5, and defendant knew of the failure at the time. On September 10 plaintiffs wrote to defendant that in accordance with his original agreement and with his telegram of the 26th, they would expect him to remit the cash for the two sales mentioned, less one per cent. a month for the unexpired time of the credit given. *Held:*

(1) The reference to " the 15th " was to the 15th of September.

(2) Defendant's offer in the telegram of August 26th remained open until accepted on September 10th.

(3) The reference in the acceptance to the original agreement did not make it other than an unqualified acceptance of defendant's offer.

APPEAL from the Superior Court of *Milwaukee* County.

The plaintiffs were copartners, engaged in the business of purchasing and selling liquors at Louisville, Ky., and other points, under the firm name of T. H. Sherley & Co. The defendant resided in Milwaukee. Prior to March 26, 1889, the defendant had been engaged in business as a traveling salesman for dealers in liquor, and had an established custom and about seventy-five old customers. At the date named he entered into negotiations, by correspondence, with the plaintiffs to sell certain brands of whisky and liquors for them, on commission, in Milwaukee and at other points. As the result of such correspondence the defendant and the plaintiffs entered into an agreement in writing to the effect that the defendant should sell said liquors to certain of said customers for the plaintiffs, on commission; and that, as to any of said customers to whom the plaintiffs did not wish to sell, the defendant would take their paper, running to. himself, and discount the same at the usual rates; and that he would discount all paper taken on such sales from such customers at the usual rates.

Among the several letters passing between them in re-

spect to such sales were letters sent at the several dai hereinafter named, and received in the due course of m' as follows, to wit: On July 30, 1889, the defendant w the plaintiffs inquiring for what they would sell Wei Bros., in Milwaukee, the liquors therein described on regu lar time, with privilege to discount the paper at any time, and allow the defendant $1 a barrel commission. On August 1, 1889, the plaintiffs replied to the effect that they would sell Webster Bros. the liquors described, and take their paper at four months, and allow the defendant fifty cents a barrel commission; and that, should he desire to make $1 a barrel, he would have to add the other fifty cents to the price of the whisky. On August 5, 1889, the defendant replied to the effect that he should not sell unless he could get $1 a barrel commission, and that they could send Webster Bros. the liquors described; terms, four months, with privilege of discount at any time at one per cent. a month off. On August 8, 1889, the plaintiffs wrote to the defendant to the effect that they would send Webster Bros. warehouse receipt for the liquors described, four months, and credit the defendant's account with $1 a barrel commission. On August 12, 1889, the defendant wrote the plaintiffs to the effect that he had sold Webster Bros. another lot of liquors therein described, on four months' time, and asking them to forward the warehouse receipt, and that he was to have $1 a barrel commission. On August 15, 1889, the plaintiffs wrote the defendant to the effect that they had forwarded to Webster Bros. papers for the liquors last described, and credited his account with $1 a barrel commission. On August 23, 1889, the plaintiffs wrote to the defendant saying, in effect: "In your letter of March 30th, proposing to sell our whiskies, you state that any of your customers to whom we sell, you will discount their papers yourself. Referring to that letter, we beg to ask you if you are willing to discount the

two sales made in Milwaukee [to Webster Bros.], and at what rate you will discount the paper, without recourse." On August 26, 1889, the defendant telegraphed the plaintiffs: "Will discount paper after the 15th, both bills, one a month, without recourse." On August 26th the plaintiffs replied: "We are in receipt of your telegram of to-day, as follows: 'Will discount paper after the 15th, both bills, one a month, without recourse.' From the above it seems you think very highly of this paper, and, judging from the commercial reports, you have reason to. About the 15th we will let you know whether or not we will avail ourselves of your kind offer." On September 10, 1889, the plaintiffs wrote the defendant: "We will, in accordance with your original agreement and with your telegram communication of the 26th, expect you to remit us the cash for the two sales made to Webster Bros., less one per cent. per month for the unexpired time. We would suggest to you that as you have to guaranty these sales and agree to discount the paper, that you take the necessary steps to protect yourself and collect the money."

The claims then held by the plaintiffs against Webster Bros. consisted of their note, dated August 8, 1889, for $495.09, due four months after date, and an account dated August 15, 1889, for $404.41, which note the plaintiffs claim the defendant agreed to discount at $480.24, and they drew on him accordingly for that amount, November 22, 1889, but the same was not paid; and which account the plaintiffs claim that the defendant agreed to discount at $391.11, and the same was by the plaintiffs assigned to the defendant upon his paying the amount last named; and the two sums in the aggregate amounted to $871.35, to recover which, with interest from September 15, 1889, this action was commenced, March 5, 1890. The answer consists of admissions and denials and counter allegations.

A jury being waived, the cause was tried by the court,

and at the close of the trial the court found, in addition to the facts stated, that the defendant only agreed by the correspondence to guaranty such orders as the plaintiffs should decline to fill without his guaranty; that the sales to Webster Bros. were made by the plaintiffs through the defendant, without any request that he should guaranty the payment thereof, and that said sales were accepted by the plaintiffs without any guaranty of payment having been required or made; that the plaintiffs did not accept the defendant's offer to discount their claims against Webster Bros., and that the defendant did not become liable therefor; that Webster Bros. failed, and their property was seized upon execution September 5, 1889; that the plaintiffs' claims against them were past due at the time of the commencement of this action, and still remain unpaid, and that payment was demanded by the plaintiffs of the defendant, and refused; that the plaintiffs tendered to the defendant an assignment of said accounts and obligations against said Webster Bros. As conclusions of law, the court found that the defendant is entitled to a judgment dismissing the complaint upon the merits, with costs, and ordered judgment accordingly. From the judgment entered accordingly the plaintiffs appeal.

For the appellants there was a brief by *Williams & Friend* and *Williams & Robinson,* and oral argument by *O. T. Williams.* They argued, among other things, that the contract was not rendered invalid by the failure of Webster Bros. That was one of the possibilities contemplated. A subsequent depreciation in the value of a thing, or its failure, certainly when that was one of the things contemplated, is not an available failure of consideration. *Perry v. Buckman,* 33 Vt. 7; *Gore v. Mason,* 18 Me. 84; *Harmon v. Bird,* 22 Wend. 113.

For the respondent there was a brief by *Rietbrock & Halsey,* and oral argument by *L. W. Halsey.* They con-

tended, *inter alia*, that even if the letter of September 10th was by its terms an acceptance, it was not timely and there was a failure of consideration therefor.   1 Parsons, Cont. 462; *Stewart v. Loring*, 5 Allen, 306; 3 Am. & Eng. Ency. of Law, 897, subd. 72; *Union Sav. Inst. v. Hill*, 139 Mass. 47; *Muhlenberg v. Henning*, 116 Pa. St. 138; *Gibson v. Pelkie*, 37 Mich. 380; *Couturier v. Hastie*, 5 H. L. Cas. 673; Benj. Sales, 423 *et seq.*; 2 Chitty, Cont. (11th Am. ed.), 931, note *t*.

CASSODAY, J.   The foregoing statement contains the substance of such portions of the correspondence as constitute the alleged contract upon which this action is based.   Being in writing, the only question is as to the true construction of the contract thus made.   We agree with the trial court that the sales to Webster Bros. were made by the plaintiffs through the defendant, as their agent, without any request that he should guaranty the payment thereof, and that the plaintiffs accepted such orders without any such guaranty having been required or made.   The more difficult question is whether the defendant actually agreed to discount such claims after the sales were actually made. His telegram of August 26, 1889, was an unconditional offer to discount both bills, without recourse, after the 15th. This was clearly intended to mean, and the reply of the plaintiffs sent the same day shows it was understood to mean, the 15th day of the following September.   By that letter the defendant was informed that the plaintiffs would let him know about the 15th whether or not they would avail themselves of his offer.   This was equivalent to informing the defendant that they would hold his offer under consideration for acceptance or rejection until about the 15th, and then let him know.   Had the defendant been unwilling to assent to the proposition that his offer should thus be considered as a continuing offer until the 15th, he could very easily have corrected the impression or have

withdrawn the offer altogether. But he did nothing of the kind. On the contrary, he appears to have remained silent on the subject until two months afterwards. In the mean time, and five days before September 15, 1889, the plaintiffs accepted the offer contained in the defendant's telegram mentioned, as indicated in the foregoing statement. True, the letter states that such acceptance was in accordance with the defendant's original agreement, as well as with the telegram, but that did not prevent its being an unqualified acceptance of the offer contained in the telegram. In the language of a Massachusetts case cited: "Though the writing signed by the defendant was but an offer, and an offer which might be revoked, yet, while it remained in force and unrevoked, it was a continuing offer during the time limited for acceptance; and during the whole of that time it was an offer, every instant; but, as soon as it was accepted, it ceased to be an offer merely, and then ripened into a contract." *Boston & M. R. Co. v. Bartlett*, 3 Cush. 227. "Willingness to contract once manifested is presumed to continue for the time limited by the offer, or, if not so limited, until expressly revoked, or overcome by a contrary presumption." *Mactier's Adm'rs v. Frith*, 6 Wend. 103, 115. In the opinion of the court in that case by Mr. Justice MARCY, it is in effect said that assent to a proposition may sometimes be presumed from a party's silence. In a very recent English case it is said by Lord HERSCHELL "that a person who has made an offer must be considered as continuously making it until he has brought to the knowledge of the person to whom it was made that it is withdrawn," and he cites several cases in support of the proposition. *Henthorn v. Fraser*, [1892] 2 Ch. 31. See, also, *Stevenson v. McLean*, 5 Q. B. Div. 351. These decisions are in line with our own adjudications. *Matteson v. Scofield*, 27 Wis. 671; *Washburn v. Fletcher*, 42 Wis. 170; *Hawkinson v. Harmon*, 69 Wis. 551.

We must hold that the defendant's offer by telegram

remained open until it was accepted. It is true that Webster Bros. failed after the defendant's offer, and before its acceptance; but it is also undisputed that the defendant was in their store, and ascertained the fact of such failure, six days before such acceptance, and hence had plenty of time to withdraw his offer before it became binding, had he desired to do so. We must hold that the defendant is liable on the contract.

*By the Court.*— The judgment of the superior court is reversed, and the cause is remanded with direction to enter judgment against the defendant and in favor of the plaintiffs for the amount claimed in the complaint, and for further proceedings according to law.

