Jones v. Wattles.

CLARENCE M. JONES v. GUERDON W. WATTLES.

FILED DECEMBER 3, 1902.     NO. 12,383.

Commissioner's opinion, Department No. 1.

1. **Instructions.** Instructions must be based upon, and applicable to, the evidence, and must not be such as to authorize the jury to draw an unwarranted inference therefrom.

2. **Contracts:** PRINCIPAL AND AGENT. Acceptance of an offer to sell effects a contract between proposer and acceptor. The fact that a receipt for part of the purchase price is afterward given to the latter's agent, or that such receipt is signed by the former's agent, is not sufficient to constitute such agents the contracting parties.

3. ———: STATUTE OF FRAUDS: PART PAYMENT. The payment of part of the purchase price to an agent expressly authorized to make a sale is a sufficient compliance with the statute of frauds; especially in the absence of any showing that the seller was prejudiced by payment to the agent instead of to himself.

4. ———: MEMORANDUM: SUBSCRIPTION: AUTHORITY. Written authority to an agent to effect a sale of corporate stock, is sufficient to authorize him to subscribe the memorandum required by the statute of frauds.

5. **Evidence: ERROR WITHOUT PREJUDICE.** A judgment will not be reversed merely for the admission of a single item of incompetent evidence, if it is followed immediately by competent evidence on the same point corroborating the former, especially where it is apparent that the jury could not have been misled thereby.

6. **Breach of Contract: NOMINAL DAMAGE.** Where a breach of contract is established, the injured party is entitled, at least, to nominal damages, but his adversary can not complain of an instruction which authorizes the jury to find in his favor if it is found that the breach has resulted in no damage.

ERROR from the district court for Douglas county. Action for damages on a contract of sale of stock. Tried below before BAXTER, J. Judgment for plaintiff. *Affirmed.*

*Lodowick F. Crofoot* and *Edgar H. Scott,* for plaintiff in error.

*James H. Macomber, contra.*

LOBINGIER, C.

In 1898 plaintiff in error, who was then a resident of Columbus, Ohio, owned certain shares of stock in the Omaha Street Railway Company. In the latter part of the year he was in correspondence with one H. H. Harder, of Omaha, in regard to having the stock sold, and on January 6, 1899, he wrote Harder the following letter:

*"Mr. H. H. Harder, Omaha, Nebr.*

"DEAR SIR: In reply to your valued favor of December 27th and your telegram of yesterday, which is just at hand, I beg to say that I do not feel like selling our 400 shares of street railway stock for less than forty cents (40 cts). If you can find me a purchaser at that figure within a few days, shall be pleased to pay you a commission of $200.00.

"According to recent financial reports from New York and generally throughout the country all securities bid fair to command very much higher prices in the near future.

"Have just wired you as follows: 'Will sell 400 shares at forty cents. Nothing less.'

"Hoping that you will be able to make a sale of this stock; at the same time feeling that it is very likely to soon be worth fifty cents, with kindest regards,

"Yours very truly,

"CLARENCE M. JONES."

Harder sent a message in response to this, which does not appear to have been introduced in evidence, and on the following day plaintiff in error sent the following telegram:

*"To H. H. Harder.*        "COLUMBUS, O., Jan. 7, 1899.

"Am sorry will take fifteen thousand eight hundred net ex dividend good only to day.        C. M. JONES."

Meanwhile, Harder was attempting to effect a sale of the stock and was negotiating for that purpose with defendant in error and one W. S. Blackwell. Both of these latter parties testified that Blackwell's part in the transaction was merely that of a representative of defendant in error, and no testimony was offered that Blackwell purported to be anything else. The letter and the telegram above set forth were both shown to Wattles by Harder and the latter stated that he was prepared to make a sale on the terms therein stated. Defendant in error thereupon announced that he would take the stock on these terms. Together with Blackwell, he went to his office in the Union National Bank and there drew a check on that bank for $1,000, payable to Blackwell's order, and had it certified. Blackwell took the check and indorsed thereon the words: "Pay to the order of H. H. Harder, agent for C. M. Jones. W. S. Blackwell." He then went to Harder's office, where Blackwell delivered the check to the latter, who thereupon gave him the following memorandum:

"$1,000.00.        OMAHA, NEB., Jan. 7th, 1898.

"Received of W. S. Blackwell, one thousand dollars, for pm't on 400 shares O. S. Ry. stock for $15,800.

"H. H. HARDER,
*"Agt. C. M. Jones."*

Harder then, in the presence of both parties, wrote the following telegram, which was duly forwarded to plaintiff in error:

"*Clarence M. Jones, Columbus, Ohio.*

"Proposition accepted. One thousand deposited. Forward stock indorsed in blank. No dividend pending.

"H. H. HARDER."

The check was indorsed by Harder as agent, deposited in the Commerical National Bank, passed through the clearing-house and was stamped "Paid" by the Union National Bank on January 10th. On the following day Harder informed defendant in error that Jones would not deliver the stock, and on the same day Wattles commenced this action. On the trial the court treated the transactions above reviewed as disclosing a contract between parties, and its breach, and left it to the jury to find the amount of damage. Upon the verdict thus returned, judgment was rendered in favor of plaintiff, and defendant prosecutes error therefrom.

It is first contended that the court erred in refusing the following instruction requested by plaintiff in error: "You are instructed that if from all the facts and circumstances of the case, you are satisfied from the evidence that at the time of the giving of the receipt introduced in evidence, it was the intention that the agreement for the sale of the stock should be binding upon W. S. Blackwell and not upon the plaintiff Guerdon W. Wattles, then your verdict should be for the defendant." The objection to this request is that it is wholly inapplicable to the evidence. As we have already seen, Jones made a distinct and unqualified offer to sell the stock upon certain terms. This offer was not to any definite person, nor need it have been, for "an offer may be made to all the world." Anson, Contracts [Knowlton's ed.], p. 39. It was, however, expressly and unqualifiedly accepted by Wattles, and that acceptance turned the offer into a contract. Anson, Contracts [Knowlton's ed.], p. 27. The

delivery of the check and the taking of the receipt were mere incidents in the details of the contract already formed from this offer and acceptance. The legal relations of the parties are based upon this offer and its acceptance, and there is no evidence that Blackwell took any part in these in his own behalf. The mere fact that the check was given to him to deliver and that the receipt was made out to him in consummating these details of the performance of a contract already made, would not justify the inference that Blackwell was a contracting party, especially in the face of the testimony that whatever he did was done as the representative of Wattles. To have given the instruction asked would have been to authorize, if not to suggest, to the jury, to return a finding with reference to the attitude of these parties, which the court would have been obliged to set aside. The fallacy of plaintiff in error's argument throughout, is in treating the receipt of January 7 as though it were the contract or, at least, the principal item of evidence concerning the contract. Thus counsel say: "The only written evidence of the contract * * * is embodied in the receipt." On the contrary, as we have seen, the first written evidence of the contract is the letter and telegram of Jones; the former containing instructions and authority of Harder, and the latter the offer to sell. Counsel asks us to suppose that Jones were attempting to enforce this contract against Wattles. The suggestion is pertinent. The contract must be mutual and neither party can enforce it unless both can. But what was to prevent Jones from holding Wattles from the moment the latter communicated his acceptance of the offer? It is elementary that an undisclosed principal may be held as soon as discovered. Mechem, Agency, sec. 695. As we view the case, Wattles was not even an undisclosed principal. He conducted negotiations personally with Harder prior to the sale, and he himself, and not Blackwell, communicated the acceptance of the offer. But even had he remained undisclosed during this time, still Jones was informed by Harder's

telegram of January 10th, that Wattles was the pur-
chaser, and thus before Jones had repudiated the con-
tract himself, he was furnished with the information
which enabled him to enforce the liability of Wattles.
It is, of course, true that a party is entitled to have his
theory of the case submitted to the jury; but the rule is
subject to the important qualification, which all the au-
thorities cited by counsel on this point recognize, that his
theory must be applicable to, and based on, the evidence.
It must not be such as will permit the jury to draw an
inference which the evidence will not justify. *Shiverick
v. Gunning Co.*, 58 Nebr., 29; *City of Omaha v. Coombe*,
48 Nebr., 879.

*Persons v. McDonald*, 60 Nebr., 452, and its citations,
are relied upon in support of the contention that the court
should have given the following charge: "You are in-
structed that the evidence in this case shows that the
contract as shown by the receipt introduced in evidence,
is in law the contract of H. H. Harder, and is not
binding upon the defendant in this case." The request,
as it appears in the record, is somewhat ambiguous;
but aside from this, we think it should not have been
given. This is not a case where the contract was signed
by an agent. The offer out of which the contract arose
was, as we have seen, signed by the principal. For
the reasons already discussed, the signing of the receipt
by Harder subsequent to the acceptance by Wattles of
the written offer, could not change the character of the
contract. In the case relied upon by counsel, the entire
contract was in writing. How the offer and acceptance
may have been evidenced there does not appear, nor is it
material, since all prior negotiations were merged in this
complete written instrument, which was signed in such a
way as to bind the agent only. The court in the opinion
distinguishes the case cited from *McWilliams v. Lawless*,
15 Nebr., 131, where the receipt was fuller than here,
though the signature was similar, and where the court
says that parol evidence is admissible to show that the

contract is really that of the principal. In the case at bar, aside from the fact that the contract was already formed through the acceptance of the offer, there is the further fact that the receipt was a mere memorandum, not purporting to be complete in itself, and therefore explainable by parol.

It is further contended that the contract was void under the statute of frauds and that the part payment by delivery of the check was not sufficient to satisfy the statute, because Harder was not authorized to receive payment; and in this connection Harder's agency for Jones is wholly denied. We are at a loss, then, to understand the latter's letter of January 6th. This did not, as counsel urge, merely authorize him to find a purchaser, for in so doing counsel ignore the other portions of the letter. Jones offers to pay Harder a commission of $200, and closes by, "Hoping that you will be able to make a sale of this stock." This was more than was required in order to constitute Harder an agent for the purpose of effecting a sale. It would have been sufficient had Jones expressed consent, however reluctant; but by this letter he shows not alone consent, but also desire, not to say anxiety, that the sale be made by Harder. Indeed, if Harder was not the agent of Jones, what was he? He certainly was not a purchaser of this stock, and there is not the slightest evidence that either Blackwell or Wattles clothed him with any authority to act for them. Moreover, the other correspondence between Jones and Harder indicates that this transaction was but one among others in which Harder had represented plaintiff in error in Omaha. As the latter is not shown to have had any other representative in that city, and especially when Wattles was shown the letter and telegrams relating to the stock in question, we think he was pursuing the course of an ordinarily prudent man in having this instalment of the purchase price paid to Harder. The check was certified and passed through the bank in the regular way, and no objection was made then or afterward as to the form of the payment.

Counsel cite many authorities in support of their conten-

tion that a broker has no implied authority to receive payment unless the property forming the subject of the sale is in his possession. These were cases where the purchaser made payment to the broker, and the latter failed to account to the seller, and the courts, applying the principle that where one of two innocent parties must suffer, the one who made the loss possible must bear it, and that a broker is the agent of both parties, hold that the purchaser is chargeable with notice of limitations upon his authority from the seller. It will be seen that none of these essential facts appear in the case at bar. Harder was not, technically, a broker, because he is not shown to have been acting for Wattles, and was, therefore, not the agent for both parties. Moreover, there is no question of a failure to account to Jones, and no claim of any loss by him. The only question here involved is whether the payment thus made was sufficient to satisfy the statute of frauds. None of the cases cited present that question and none of them, so far as we have been able to find, contain the slightest indication, even by way of *dicta,* that such payment would not be sufficient for that purpose, especially where no loss on that account results to the seller, and where at the time the agent's authority is not repudiated. We presume that if the transaction had been permitted to proceed far enough, so that the money had been actually remitted to Jones, there would have been no question but that the statute of frauds would be satisfied. Must that result be prevented because Jones interfered and repudiated the transaction, not on the ground of Harder's lack of authority, but because of a conclusion not to perform?

But even were it true that this part payment was insufficient, we still think that the statute of frauds is complied with in this case by the written memoranda of the parties. In the first place, authority is not wanting for the proposition that an offer in writing, signed by one party (as was plaintiff in error's telegram of January 7th, taken in connection with the letter of the day previous), is a sufficient memorandum to satisfy the statute of frauds if it be fol-

lowed up by an acceptance, even though in parol, by the other party. *Reuss v. Picksley,* L. R. 1 Exch. (Eng.), 342; *Hawkinson v. Harmon,* 69 Wis., 551; *Sanborn v. Flagler,* 9 Allen [Mass.], 474; *Tufts v. Plymouth Gold Mining Co.,* 14 Allen [Mass.], 407. But we need not rest our decision of the point on this proposition alone, for the receipt signed and delivered by Harder as the agent of Jones constituted a sufficient memorandum to meet the requirements of the statute. The objection that Harder was not authorized in writing to subscribe his name is answered by the terms of plaintiff in error's letter of January 6th, where he not only gives the authority, but expresses the hope that the sale might be made by Harder. The authority thus given must be treated as including every step which was necessary to carry it out. If the contention is sound that there could be no sale in this case without a subscription by Jones or his agent, it necessarily follows that when Harder was empowered to effect the sale he was thereby authorized to make the subscription. As was said in *Pringle v. Spaulding,* 53 Barb. [N. Y.], 17,—a stronger case than this, because the subject-matter was real estate and the agent's authority was not in writing, that not being required by the statute: "An authority to do an act, includes an authority to employ whatever means are necessary to accomplish a due execution of the power." The fact that this memorandum was not signed until after the offer had been accepted and the contract formed is immaterial. "The memorandum may be subsequent to the contract itself." 1 Reed, Statute of Frauds, sec. 355; Cf. *Sheehy v. Fulton,* 38 Nebr., 691; *Riley v. Bancroft's Estate,* 51 Nebr., 864. We are satisfied that this contract meets the requirements of the statute of frauds.

Complaint is made concerning the admission of testimony by defendant in error that there were no accrued dividends from the stock in question at the time of the sale. The object of this testimony is not entirely clear. A number of witnesses were examined on both sides concerning the value of the stock. Among others, defendant

in error was interrogated on this point, and his competency to testify was questioned by counsel for plaintiff in error. His testimony that no dividend was pending might have been material as showing his qualifications to testify as to the value of the stock. In this view, his statement as to what he ascertained would have been admissible, not for the purpose of proving the declarations of a third party, but merely to show what steps the witness had taken to qualify himself to give an opinion concerning the value of the stock; for its dividend-bearing character would certainly be an element in determining its value. But if it be conceded that this testimony was incompetent, we do not think it was prejudicial, because the secretary of the corporation whose stock was the subject of the sale testified, after an examination of the corporate records, that there were no accrued dividends. If, then, the admission of defendant in error's testimony on this point was error, we must hold it to be error without prejudice. It is like admitting parol evidence as to the contents of a written instrument and then immediately afterward introducing the instrument itself, and showing that it conforms to the testimony given. The practice could not be commended, but since it could not mislead the jury or prejudice the defeated party, we would hardly be justified in reversing, merely because of it, a judgment otherwise correct.

Finally, it is urged that the court erred in charging the jury that its finding should be in favor of the plaintiff "unless you find from the evidence that the plaintiff was in no way damaged by the failure and the refusal of the defendant to deliver to plaintiff the said 400 shares of stock." It is claimed that this instruction places the *onus probandi* upon the defendant. But it is conceded that the court correctly states the rule as to the burden of proof in a previous instruction. We do not see that this was qualified by the charge complained of. In the latter the trial court was speaking, not of the burden of proof, but of the amount of damage, and as the evidence discloses a breach of the contract, plaintiff was entitled, at

least, to nominal damages. *Mollyneaux v. Wittenberg,* 39 Nebr., 547. The instruction, therefore, in so far as it implied that the jury might find for defendant in case plaintiff was found not to have been damaged, was less favorable to the latter than he was entitled to. But of this plaintiff in error is in no position to complain.

We have now reviewed the questions discussed by counsel in their briefs. Other points are raised in the petition but as they are not argued they must, under a well-settled rule of this court, be treated as waived. We may add that the judgment below seems to us not alone free from technical and prejudicial error, but morally just, as well. Plaintiff in error made the offer to sell his stock on his own terms, and so far as appears, voluntarily and without effort at inducement from any one; least of all defendant in error. The latter accepted his terms entire and seems to have been proceeding in good faith to carry out the contract when it was repudiated. We do not think that this court should be asked to deprive him of its benefits, or that plaintiff in error should expect to be relieved of the legal consequences of his acts, even though the stock might have brought more if sold to some one else.

We therefore recommend that the judgment be affirmed.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.